UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

SELCUK KARAMANOGLU,                    )
                                       )
                                       )
                Plaintiff              )
                                       )
v.                                     )
                                       )
                                       )        Docket No.  2:19-cv-00031-JHR
                                       )
TOWN OF YARMOUTH, et al.               )
                                       )
                                       )
                                       )
        Defendants                     )

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 56 and the Court's Report of Pre-Filing Conference dated November 25, 2019 (ECF No. 30), Defendants hereby move for summary judgment as to all of Plaintiff's claims. As set forth below, and in the Stipulated Facts (ECF No. 32) and Defendants' Statement of Undisputed Material Facts ("DSMF"), Defendants contend that there are no genuine issues of material fact precluding this Court from entering summary judgment in favor of Defendants.

**BACKGROUND**

This case arises out of the arrest of Plaintiff Selcuk Karamanoglu for domestic violence assault on June 16, 2018 by Defendant Brian Andreasen of the Town of Yarmouth Police Department.[1] Plaintiff was arrested after Rose Heikkinen reported to Officer Andreasen that Plaintiff had physically assaulted her. Plaintiff subsequently filed this civil action against Officer

---

[1] Plaintiff was arrested either shortly before or shortly after 12:00 am on June 16, 2018, but the parties agree that any discrepancy in the exact time of the arrest is not material. Stipulated Facts ¶ 18.

Andreasen, the Yarmouth Chief of Police, [2] and the Town of Yarmouth. Plaintiff's Complaint asserts, pursuant to 42 U.S.C. § 1983, a deprivation of Plaintiff's Fourth Amendment rights (Count 1) and a state law tort claim of unlawful arrest (Count 4) against Defendant Andreasen; [3] Section 1983 municipal liability claims against the Chief of Police and the Town of Yarmouth (Count 2); and comparable claims against all Defendants under the Maine Civil Rights Act (Count 3). *See generally* Complaint (ECF Doc. No. 1).

## UNDISPUTED MATERIAL FACTS

On the evening of June 15, 2018, Rose Heikkinen went to the Yarmouth Police station to report that she had been involved in a fight with her boyfriend, Plaintiff Selcuk Karamanoglu, and that it got physical. Stipulated Facts (ECF No. 32) ("SF") ¶ 8. Because it was late in the evening beyond the normal business hours of the Town, Ms. Heikkinen spoke with dispatch on a phone located in the lobby of the Yarmouth Police station. SF ¶ 9. Officer Andreasen was on duty on June 15, 2018 patrolling. At approximately 9:48 pm, Officer Andreasen was directed by dispatch to return to the Yarmouth Police station to meet with Ms. Heikkinen, who had come to the station to report that she was involved in a domestic incident. SF ¶ 11.

When Officer Andreasen pulled into the parking lot of the Yarmouth Police station, there was one other vehicle in the parking lot, which he assumed belonged to the complainant, Ms. Heikkinen. SF ¶ 12. Officer Andreasen ran the vehicle's license plate through the Mobile Data Terminal in his patrol car. SF ¶ 13. The Maine Bureau of Motor Vehicle response record showed

---

[2] Plaintiff initially named Michael Morrill as the defendant Chief of Police, suing him solely in his official capacity as the Chief of Police of the Yarmouth Police Department. Complaint ¶ 3. After Mr. Morrill retired from his position as Chief of Police, Defendants moved to substitute the new Chief, Daniel Gallant, in his official capacity, as the defendant. *See* Motion for Substitution of Party (ECF No. 15). The Court granted the Motion to Substitute on June 20, 2019. (ECF No. 20).

[3] In Count 4 of his Complaint, Plaintiff alleged a state law tort claim of unlawful arrest against all Defendants, including the Chief of Police in his official capacity and the Town of Yarmouth. Complaint at 11, ECF Page ID # 11. However, Plaintiff has agreed to limit his state law unlawful arrest claim in Count 4 to Defendant Andreasen. Report of Pre-Filing Conference (ECF No. 30) at 1, ECF PageID # 350.

Ms. Heikkinen's registration and her residence as 90 Cornfield Point Road in Yarmouth, Maine, which is the same address as Plaintiff. SF ¶ 13. The Maine Bureau of Motor Vehicle response record also showed that Ms. Heikkinen's driver's license listed 90 Cornfield Point as her residence. DSMF ¶ 1. Officer Andreasen learned from Ms. Heikkinen that 90 Cornfield Point was also the address of Plaintiff and was the place where the domestic incident she was reporting had occurred. DSMF ¶ 2. Officer Andreasen was familiar with Plaintiff because Yarmouth Police officers had previously been involved in prior incidents involving Plaintiff and his now ex-wife, including a charge for violating a Protection from Abuse Order issued on behalf of his ex-wife. DSMF ¶ 3. The Yarmouth Police Department is a small department with approximately 13 members and Officer Andreasen is generally made aware of incidents involving other officers during shift changes. DSMF ¶ 4.

Officer Andreasen first met with Ms. Heikkinen in the lobby of the Yarmouth police station and observed that she was emotional and, at times sobbing. DSMF ¶ 5. However, she was able to articulate to Officer Andreasen what had happened earlier that night. DSMF ¶ 5. Officer Andreasen observed that Ms. Heikkinen had blood on her clothing and that she was holding onto the right side of her ribs, complaining of pain in her ribcage. DSMF ¶ 6. Officer Andreasen asked Ms. Heikkinen if she wanted to be evaluated by Yarmouth Rescue. DSMF ¶ 7. While she initially declined to be evaluated, she was later seen by Yarmouth Rescue, but refused transport to the hospital. *Id.* Officer Andreasen interviewed Ms. Heikkinen. SF ¶ 14.

Ms. Heikkinen told Officer Andreasen that she had been dating Plaintiff on and off for approximately three years and that she lives part time in Auburn and part time at 90 Cornfield Point in Yarmouth. DSMF ¶¶ 8-9. Ms. Heikkinen also told Officer Andreasen that she had a sexual relationship with Plaintiff. DSMF ¶ 10. Ms. Heikkinen explained that earlier in the afternoon, she was at 90 Cornfield Point when she noticed Plaintiff was wearing a new shirt and

asked him about it because she suspected he was seeing someone else. DSMF ¶ 11. Plaintiff

denied to Ms. Heikkinen that the shirt was new and denied that he was seeing anyone else.

DSMF ¶ 12. Ms.  Heikkinen then left 90 Cornfield Point to go to dinner with her friend in

Lisbon. DSMF ¶ 12. Ms.  Heikkinen explained to Officer Andreasen that she was very upset

during dinner because she kept thinking that Plaintiff was seeing someone else. DSMF ¶ 13.

After Ms. Heikkinen finished dinner, she drove back to 90 Cornfield Point and let herself into the

house using the garage door opener that she kept in her vehicle. DSMF ¶ 14. Ms. Heikkinen

went into the bedroom where Plaintiff was sleeping and told him she wanted to see his cell

phone. DSMF ¶ 15. Plaintiff told her to find it herself and when she found his phone, Ms.

Heikkinen saw that Plaintiff had been communicating with an ex-girlfriend. DSMF ¶ 16.

Ms. Heikkinen told Officer Andreasen that she became angry, broke her garage door

opener on the floor, and hit Plaintiff on his chest. DSMF ¶ 17. Plaintiff then grabbed her by the

arms, pushed her, and told her to get out of the house. DSMF ¶ 18. Ms. Heikkinen told Officer

Andreasen that she did not want to leave so she pushed Plaintiff back and Plaintiff grabbed her

neck. DSMF ¶ 19. Officer Andreasen observed that Ms. Heikkinen's skin around her neck and

face had blotchy spots on it. DSMF ¶ 20. Ms. Heikkinen told Officer Andreasen that Plaintiff

kept telling her to get out of the house and was physically pushing her out of the house. DSMF ¶

21. Ms. Heikkinen told Officer Andreasen that she fought back and when they got to the garage,

Plaintiff pushed her down the stairs onto the concrete floor and this is when she believed she hurt

her ribs. DSMF ¶ 22. Ms. Heikkinen also explained to Officer Andreasen that Plaintiff was

emotionally abusive to her, had destroyed property belonging to her in the past, and often did not

let her have access to money. DSMF ¶ 23.

Officer Andreasen asked Ms. Heikkinen if she would be willing to complete a witness

statement and, while hesitant at first, she agreed to do so.  DSMF ¶ 24; SF 15. Officer Andreasen

also photographed Ms. Heikkinen's injuries, including a visible mark on her neck. DSMF ¶ 25; SF ¶ 14. Officer Andreasen discussed Ms. Heikkinen's complaint with Officer Joshua Robinson, who was on duty with him that evening. SF ¶ 17. Based on his knowledge of Mr. Karamanoglu's previous history with his ex-wife, the information Ms. Heikkinen provided, including that Mr. Karamanoglu had grabbed her by the neck and pushed her down the stairs, as well as his experience and recent domestic violence training, Officer Andreasen determined that Mr. Karamanoglu was the predominant aggressor, meaning that he used the higher level of abuse. DSMF ¶¶ 26, 49-52. Law enforcement officers in Maine are trained at the Maine Criminal Justice Academy to use the predominant aggressor determination when there is an indication that both parties have used some physical force against each other during a domestic violence incident. DSMF ¶¶ 48-49. The MCJA also sets certain minimum standards for policies and procedures for law enforcement agencies in Maine, which includes minimum standards for domestic abuse/domestic violence policies. DSMF ¶ 67. The domestic violence minimum standards require, among other things, that law enforcement agencies include a requirement that it is the responsibility of an officer to determine the predominant aggressor and to take the appropriate action. DSMF ¶¶ 68-69. Based on the information Officer Andreasen knew and relayed to him, Officer Robinson agreed with Officer Andreasen that Mr. Karamanoglu was the predominant aggressor. DSMF ¶ 29.

Based on the fact that Ms. Heikkinen's BMV registration and driver's license listed her residence as 90 Cornfield Point, and that she had her own garage door opener to access the residence, Officer Andreasen also concluded that Ms. Heikkinen resided at that address, at least part time, and was not trespassing. DSMF ¶ 27. Ms. Heikkinen had also been in a sexual relationship with Mr. Karamanoglu so Officer Andreasen concluded that their relationship met the statutory definition of "family or household members." DSMF ¶ 28.

Later on the evening of June 15, 2018, Officer Robinson and Officer Andreasen each drove separately to 90 Cornfield Point in Yarmouth to speak with Mr. Karamanoglu. SF ¶ 18; DSMF ¶ 30. Upon arrival, Officer Andreasen told Mr. Karamanoglu why he was there and listened to Mr. Karamanoglu's side of the story. DSMF ¶ 31. Mr. Karamanoglu told Officer Andreasen that Ms. Heikkinen entered his house while he was sleeping, attacked him, and he tried to push her out of the residence. DSMF ¶ 32. Officer Andreasen did not see any visible injuries on Mr. Karamanoglu. DSMF ¶ 33. After talking shortly with Officer Andreasen, Mr. Karamanoglu stopped providing any further information to Officer Andreasen.  DSMF ¶ 34. Based on what Ms. Heikkinen had told Officer Andreasen earlier that evening, and her visible injuries including a mark on her neck, Officer Andreasen found Ms. Heikkinen's version of what had occurred to be more credible. DSMF ¶ 35. Officer Andreasen then placed Mr. Karamanoglu under arrest for domestic violence assault. DSMF ¶ 36; SF ¶ 18. Mr. Karamanoglu was transported to the Cumberland County Jail by Defendant Andreasen. SF ¶ 20. Bail was set at approximately 3:10 am on June 16, 2018 and Mr. Karamanoglu was released shortly thereafter. SF ¶ 21.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A fact is "material" if it "has the potential to change the outcome of the suit."  *Tropigas de Puerto Rico, Inc. v. Certain Underwriters of Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (parallel quotation omitted).  An issue is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id*. The facts are viewed in the light most favorable to the nonmoving party and the court draws all reasonable inferences in

favor of the nonmoving party.  *Fed. Ins. Co. v. Commerce, Inc. Co.*, 597 F.3d 68, 70 (1st Cir. 2010).  However, "[o]nce the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir. 1999).

## ARGUMENT

As a preliminary matter, because the Maine Civil Rights Act ("MCRA") was patterned after § 1983, the disposition of Plaintiff's federal law claims controls the outcome of Plaintiff's claims under the MCRA. *See Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007).  Defendants therefore do not separately address the MCRA claims.  For the reasons set forth fully below, Defendant Andreasen is entitled to summary judgment on the § 1983 and State law claim for unlawful arrest because he had probable cause to arrest Plaintiff for domestic violence assault, or at the very least, is entitled to qualified immunity and immunity under the Maine Tort Claims Act. Defendants Chief of Police and the Town of Yarmouth are entitled to summary judgment because there was no underlying constitutional violation and Plaintiff cannot meet the stringent standard to establish supervisory or municipal liability.

### I.  OFFICER ANDREASEN IS ENTITLED TO SUMMARY JUDGMENT

### A.  There was Probable Cause to Arrest Plaintiff for Domestic Violence Assault

Plaintiff cannot establish liability against Officer Andreasen for a Fourth Amendment violation under 42 U.S.C. § 1983 for an unlawful arrest. The Fourth Amendment protects the right of the people to be free from unreasonable seizures.  U.S. Const. amend. IV. A warrantless arrest is reasonable "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004).  A Fourth Amendment violation actionable under § 1983 for an unlawful arrest therefore requires a showing that the officer lacked probable cause to make the arrest.  *See Correia v. Feeney*, 620 F.3d 9, 12 (1st Cir. 2010); *Roche v.*

*John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 254 (1st Cir. 1996).  Probable cause to arrest exists where "at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense."  *Roche*, 81 F.3d at 254 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Probable cause is "not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *D.C. v. Wesby*, 138 S.Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (citations omitted); *see also United States v. Rivera*, 825 F.3d 59, 63 (1st Cir. 2016) (noting that probable cause "does not demand certainty, or proof beyond a reasonable doubt, or even proof by a preponderance of the evidence"). In considering whether an officer had probable cause for an arrest, courts examine "the facts and circumstances within the arresting officer's knowledge at the time of arrest to determine if a person of 'reasonable caution and prudence' would have believed that the defendant committed a crime." *Forest v. Pawtucket Police Dep't*, 377 F.3d 52, 56–57 (1st Cir. 2004). The only relevant facts are those known to the officer and the question of probable cause is an objective inquiry. *Holder v. Town Of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009)

Plaintiff was arrested by Officer Andreasen for domestic violence assault. 17-A M.R.S.A. § 207-A. Relevant here, under Maine law, a person is guilty of domestic violence assault if the person "intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person" and the victim is a "family or household member." 17-A M.R.S.A. § 207, 207-A. For purposes of domestic violence assault, the definition of "family or household member" includes "individuals presently or formerly living together and individuals who are or were sexual partners." 17-A M.R.A.S. § 207-A; 19-A M.R.S.A. § 4002(4). Maine law provides that a law enforcement officer may arrest a person without a warrant if the officer has probable cause to believe that the

person has committed or is committing domestic violence assault. [4]  17-A M.R.S.A. § 15(1)(A)(5-B).

Based on the undisputed facts discussed above, there was probable cause to believe that Plaintiff had committed the crime of domestic violence assault. First, Officer Andreasen had probable cause to believe that the victim, Ms. Heikkinen and Plaintiff were "family or household members" as defined under Maine law. It is undisputed that Ms. Heikkinen told Officer Andreasen that she and Plaintiff were in a sexual relationship. Ms. Heikkinen also told Officer Andreasen that she resided at 90 Cornfield Point and he saw from the Maine BMV response after running her license plate number that Ms. Heikkinen's vehicle registration and her driver's license listed her residence as 90 Cornfield Point. Given this information, Officer Andreasen had reasonably reliable information to conclude that Ms. Heikkinen and Plaintiff were individuals who were presently or formerly living together. Accordingly, there was probable cause to believe that Ms. Heikkinen and Plaintiff were "family or household members" for purposes of domestic violence assault.

Second, Officer Andreasen had probable cause to believe that Plaintiff committed an assault against Ms. Heikkinen, that is that he intentionally, knowingly or recklessly caused bodily injury or offensive physical contact to her. Ms. Heikkinen told Officer Andreasen that Plaintiff had repeatedly pushed her, that he had grabbed her by the neck, and pushed her down the stairs. He also observed physical injuries on Ms. Heikkinen, including the injuries on her neck. Officer Andreasen interviewed the victim, Ms. Heikkinen, and had her write out a statement. Ms. Heikkinen was visibly upset, but was able to articulate what had occurred between her and Plaintiff and describe the bodily injuries and offensive physical contact that Plaintiff had caused to her, including pushing

---

[4] Maine law also provides that a law enforcement officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed or is committing assault if the officer reasonably believes that the person and the victim are family or household members, 17-A M.R.S.A. § 15(1)(A)(5-A). Because the crime of domestic violence assault relevant here by definition encapsulates the crime described in 17-A M.R.S.A. § 15(1)(A)(5-A), Defendants do not distinguish between the two statutory bases for a warrantless arrest.

her down the stairs and grabbing her by the neck. In determining probable cause, it was reasonable for Officer Andreasen to justifiably rely on the credible information provided by the victim, Ms. Heikkinen. *Holder v. Town Of Sandown*, 585 F.3d 500, 505 (1st Cir. 2009); *United States v. Barbosa*, 896 F.3d 60, 70 (1st Cir. 2018) (citing *B.C.R. Transp. Co. v. Fontaine*, 727 F.2d 7, 10 (1st Cir. 1984)) ("[P]robable cause determinations predicated on information furnished by a victim are generally considered to be reliable."). In addition, Officer Andreasen took photographs of Ms. Heikkinen's injuries, including a mark on her neck, which corroborated Ms. Heikkinen's account that Plaintiff had grabbed her neck.

Although Ms. Heikkinen admitted to Officer Andreasen that she had hit Plaintiff on the chest first, based on his experience and recent domestic violence training, Officer Andreasen determined that Plaintiff was the predominant aggressor, meaning that he had used the higher level of abuse. Officer Andreasen reached this conclusion based on his knowledge of Mr. Karamanoglu's previous history with his ex-wife, the information Ms. Heikkinen provided, including that Mr. Karamanoglu had escalated the violence by grabbing Ms. Heikkinen by the neck and pushing her down the stairs. When he went to 90 Cornfield Point to speak with Plaintiff, Plaintiff told Officer Andreasen that Ms. Heikkinen entered his house, was attacking him, and he was trying to remove her from the residence. However, Officer Andreasen did not see any visible injuries on Mr. Karamanoglu. The mere fact that Plaintiff gave a conflicting account to Officer Andreasen does not vitiate probable cause for the arrest. Plaintiff contends that because he had a "justification defense" that might bar a successful prosecution, probable cause does not exist. Complaint ¶ 34. However, this contention is contrary to Supreme Court and First Circuit precedent.  *See Holder*, 585 F.3d at 505 ("In reliance on Supreme Court precedent, we already have rejected the proposition that a police officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest.") (citing *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct.

2689, 61 L.Ed.2d 433 (1979)). Officer Andreasen was not required to resolve Plaintiff's claim of self-defense and his conflicting account of what had happened. *Id.* at 505-06. *See also Robinson v. Cook*, 706 F.3d 25, 37 (1st Cir. 2013) ("[A] reasonable police officer need not credit a suspect's self-serving statements."). Based on the information he received from Ms. Heikkinen, including the observations he made of her injuries, Officer Andreasen had sufficient reasonably reliable information to conclude that there was a substantial chance that Plaintiff had committed the offense of domestic violence assault. Since Plaintiff's arrest was supported by probable cause, his Fourth Amendment claim for an unlawful arrest fails as a matter of law.

### B.  Defendant Andreasen is Entitled to Qualified Immunity

Even if Officer Andreasen was mistaken in his belief that probable cause existed to arrest Plaintiff for domestic violence assault, he is nevertheless entitled to qualified immunity. Qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 167 (1st Cir. 2008) (citation omitted). A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also White v. Pauly*, 137 S. Ct. 548, 551(2017). For purposes of qualified immunity, "the operative inquiry is not whether the defendant's actions actually abridged some constitutional right . . . but, rather, whether those actions were obviously inconsistent with that right." *Cox*, 391 F.3d at 31 (citations omitted). Here, "in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." *Id.*

11

In the context of probable cause, the Supreme Court has recognized that, "[g]iven its imprecise natures, officers will often find it difficult to know how the general standard of probable cause applies in 'the precise situation encountered." *Wesby*, 138 S.Ct. at 590 (citation omitted). Here, even assuming Officer Andreasen lacked actual probable cause, a reasonable officer under the circumstances confronted by Officer Andreasen reasonably would have concluded that Plaintiff and Ms. Heikkinen were family or household members and that by grabbing her by the neck with enough force to leave a visible mark, probable cause existed to arrest Plaintiff for domestic violence assault. On these undisputed facts, it cannot be said that probable cause was clearly lacking at the time of Plaintiff's arrest. Accordingly, Officer Andreasen is entitled to qualified immunity.

Even assuming that Plaintiff did not intentionally, knowingly or recklessly cause bodily injury to Ms. Heikkinen, probable cause still existed to arrest Plaintiff, at the very least, for the crime of domestic violence reckless conduct.[5] Because probable cause is an objective standard, "an arrest is lawful if the officer had probable cause to arrest for *any* offense, not just the offense cited at the time of arrest or booking." *Wesby*, 138 S. Ct. at 585, n.2 (citing *Devenpeck*, 543 U.S. at 153-155 & n.2 (emphasis added). Under Maine law, a person is guilty of domestic violence reckless conduct if he "recklessly creates a substantial risk of serious bodily injury to another person" and the victim is a "family or household member" as defined above. 17-A M.R.S.A. § 211-A(1)(A), 211. Here, as discussed *supra*, there was probable cause to believe that Plaintiff and Ms. Heikkinen were family or household members. Even if Officer Andreasen was mistaken that Plaintiff possessed the requisite *mens rea* for domestic violence assault, a reasonable officer in his shoes could conclude that Plaintiff had, at the very least created a substantial risk of serious bodily injury to Ms. Heikkinen by repeatedly pushing her, grabbing her by the throat, and pushing her down the

---

[5] Under Maine law, a warrantless arrest is authorized for domestic violence reckless conduct, 17-A M.R.S.A. § 15(1)(A)(5-B), and for reckless conduct if the officer reasonably believes that the person and the victim are family or household members, *id.* § 15(1)(A)(5-A).

stairs. Because probable cause existed to arrest Plaintiff for domestic violence reckless conduct, Officer Andreasen is entitled to qualified immunity.

While it has long been clearly established that an arrest must be supported by probable case, based on the circumstances of this case, the law was not clearly established that Officer Andreasen lacked probable cause to arrest Plaintiff for the crime of domestic violence assault. There is no controlling precedent construing probable cause in the context of Maine's or a comparable domestic violence assault statute such that *every* reasonable officer in Officer Andreasen's position would have known that the decision to arrest Plaintiff for domestic violence assault in the particular circumstances he faced would violate the Fourth Amendment. *See Rivera-Corraliza v. Morales*, 794 F.3d 208, 214-15 (1st Cir. 2015). *See also Wesby*, 138 S.Ct. at 590-91 ("[W]e have stressed the need to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'") (citing *White*, 137 S.Ct. at 552). "Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances," *Carroll v. Carman*, 574 U.S. 13, 135 S. Ct. 348, 350 (2014), First Circuit precedent would only signal to a reasonable officer in Officer Andreasen's shoes that he was entitled to rely on Ms. Heikkinen's credible statements to support his finding of probable cause. *See, e.g. Holder*, 585 F.3d at 505 (probable cause existed to arrest for assault due to information furnished by victim despite countervailing evidence suggesting victim had initiated altercation); A*costa v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 10 (1st Cir. 2004) ("The uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause."). Defense counsel could find no Supreme Court or Circuit case law that would have given Officer Andreasen fair and clear warning that probable cause was wholly lacking under these circumstances. Without such notice, and because probable cause was at the very least arguable, Officer Andreasen must be afforded qualified immunity.

**C.  Defendant Andreasen is Entitled to Summary Judgment on the State Law Claim**

Based on the undisputed facts, Plaintiff cannot establish a *prima facie* case for his state law tort claim for unlawful arrest. *See Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759, 763 ("In order to survive summary judgment, a plaintiff in a tort case must point to evidence in the record to support each element of his or her claim."). As discussed fully above, since the arrest of Plaintiff by Officer Andreasen was supported by probable cause, Plaintiff's state law tort of unlawful arrest also fails as a matter of law. Even assuming that Plaintiff could establish that Officer Andreasen lacked probable cause, he is entitled to immunity under the Maine Tort Claims Act ("MTCA")  *See* 14 M.R.S.A. §§ 8101, *et seq.*  Governmental employees are entitled to personal immunity under the MTCA from civil liability for "performing or failing to perform any discretionary function or duty . . . ."  14 M.R.S.A. §8111(1)(C).  This is true "whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid."  *Id.*  The MTCA also confers absolute immunity on governmental employees for intentional acts or omissions that arise in the course and scope of their employment.  14 M.R.S.A. § 8111(1)(E).  The only exception to the granting of immunity under Section 8111(1)(E) is for intentional acts performed in "bad faith."  *Id.*

Officer Andreasen is entitled to qualified immunity under the MTCA, whether the alleged acts are considered discretionary or intentional. Because Plaintiff's state law tort claim arises out of his arrest, the disposition of Plaintiff's Section 1983 claim informs the disposition of Plaintiff's claim under the MTCA.  *See Berube v. Conley*, 506 F.3d 79, 85–86 (1st Cir. 2007).  Unless the evidence could reasonably be construed to show that the conduct underlying Plaintiff's claims "was so egregious as to clearly exceed any discretion" the officer had, he is entitled to immunity.  *See Dimmitt v. Ockenfels*, 220 F.R.D. 116, 125 (D. Me. 2004).  As discussed fully above, Officer Andreasen reached a reasonable conclusion that probable cause existed, based on his interview with

14

Ms. Heikkinen, her visible injuries, her assertion that she and Plaintiff were in a sexual relationship, and the fact that her registration and driver's license showed her residence as 90 Cornfield Point. He was therefore authorized under Maine law to arrest Plaintiff without a warrant. There is no evidence in the record that would allow a reasonable factfinder to conclude that the conduct of Officer Andreasen was so egregious that it falls outside the scope of immunity provided by state law. *See Berube*, 506 F.3d at 85–86.  Similarly, Officer Andreasen's decision to arrest Plaintiff cannot support a finding of bad faith that would cause a loss of his intentional conduct immunity. Officer Andreasen discussed Ms. Heikkinen's complaint with another officer and also gave Plaintiff the opportunity to tell his side of the story. Based on the undisputed facts, no reasonable jury could find that Officer Andreasen acted in bad faith. As a result, Officer Andreasen is entitled to immunity under the MTCA on Plaintiff's state law tort claim.

## II.   PLAINTIFF'S SUPERVISORY AND MUNICIPAL LIABILITY CLAIMS FAIL AS A MATTER OF LAW

The claims against Defendant Chief of Police Daniel Gallant should be read as claims against the Town of Yarmouth. Chief Gallant (substituted as a party for Chief of Police Michael Morrill) is sued in his official capacity only. Complaint ¶ 3. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  The Plaintiff's claims against Chief Gallant are therefore, in actuality, claims against the Town of Yarmouth.  *Id*. ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### A.  There was No Underlying Constitutional Violation

In order to establish supervisory or municipal liability against Defendant Gallant or the Town of Yarmouth (together, the "Town"), Plaintiff would need to show that one of the Yarmouth officers violated Plaintiff's constitutional rights. *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 177-78 (1st Cir. 2008) ("The establishment of § 1983 liability against either [the Town] or the

County would ultimately depend on plaintiff proving the commission of an underlying constitutional violation by the subordinate officers."); *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002) ("If, however, the officer has inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable."). For the reasons set forth above, there was no underlying constitutional violation by Officer Andreasen, or any other Yarmouth officer.  Accordingly, Plaintiff's supervisory and municipal liability claims fail as a matter of law.

### B.  Plaintiff Cannot Meet the Deliberate Indifference Standard

Even if there was a question of fact as to whether there was an underlying constitutional violation by Officer Andreasen, Plaintiff cannot, as a matter of law, meet the standard for municipal or supervisory liability. Governmental entities can be held liable under Section 1983 for constitutional violations committed pursuant to an unconstitutional custom, policy or practice, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978), but such liability exists "only where [the entity] *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). "This requires that the plaintiff demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm."  *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir. 1989).  The First Circuit has explained that:

> The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto *respondeat superior*, has set a very high bar for assessing municipal liability under *Monell*.  The alleged municipal action at issue must constitute a "policy or custom" attributable to the City. Further, the Supreme Court has imposed two additional requirements: 1) that the municipal policy or custom actually have caused the plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as "deliberate indifference."

*Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir.2005) (citations omitted).

A failure to train or supervise may only serve as a basis for liability where the conduct "'amounts to deliberate indifference to the rights of the persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury." *Norton v. City of S. Portland*, 831 F. Supp. 2d 340, 365 (D. Me. 2011) (citing *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998)). To establish municipal liability based on a failure to train or supervise, it is not sufficient "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton*, 489 U.S. at 391.  A plaintiff must also prove that the deficiency in training actually caused the police officers' indifference to constitutional rights.  *Id.* at 391-92. To be successful, therefore, a claim that a municipality has violated the Constitution through its failure to train or supervise its employees requires a showing that the failure to provide training or supervision demonstrated "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Thompson*, 563 U.S. at 61 (quotation omitted). With respect to Plaintiffs' failure to train claim, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality]."  *City of Canton*, 489 U.S. at 390.

The undisputed evidence in the factual record accompanying this Motion refutes any claims that Plaintiffs can meet the stringent standard of "deliberate indifference" to "obvious" deficiencies in training to support a municipal liability claim. Here, Plaintiff alleges that the Town failed to properly train Officer Andreasen and that the Town's training failed to account for statutory justification defenses and was inconsistent with Maine law. *See* Complaint ¶¶ 39-41; Plaintiff's First Supp. Responses to Def.'s First Set of Interrogatories (ECF No. 31-12), ECF PageID # 559. However, the record evidence shows that Yarmouth officers receive training mandated by the Maine Criminal Justice Academy ("MCJA") regarding Maine statutory defenses and domestic

17

violence, including the "predominant aggressor" determination. DSMF ¶¶ 46-48. The MCJA is responsible for the development and implementation of training of all law enforcement officers in the State of Maine and has standardized the initial and annual training requirements of all officers. DSMF ¶ 45. The MCJA sets certain minimum standards for policies and procedures for law enforcement agencies in Maine, which includes minimum standards for domestic abuse/domestic violence policies (the "DV Minimum Standards"). DSMF ¶ 67. The DV Minimum Standards require, among other things, that law enforcement agencies include a requirement that it is the responsibility of an officer to determine the predominant aggressor and to take the appropriate action. DSMF ¶¶ 67-69. The Yarmouth Police Department has a Standard Operating Procedure on Domestic Abuse, Policy # 1013, which includes, among other things, the State mandated DV Minimum Standards regarding determining the predominant aggressor. SF ¶ 28; DSMF ¶ 70.

The record evidence shows that all Yarmouth police officers are initially trained at the MCJA on, among other things, responding to domestic violence complaints, federal and state constitutional law, lawful arrests, and Maine criminal laws and statutory defenses. DSMF ¶¶ 46-48. All Yarmouth officers must complete all of the training mandated by the MCJA to maintain their certification with the State. DSMF ¶ 55. Yarmouth officers also received additional training on, among other things, domestic violence, use of force in defense of self or a person, use of force in defense of premises, use of force in property offenses, during an extensive field training program where officers are paired with a more experienced officer to obtain hands on training while being directly supervised. DSMF ¶¶ 56-58. As a Yarmouth police officer, Officer Andreasen received additional training in domestic violence since his graduation from the MCJA and his completion of field training, including a May 7, 2018 domestic violence training that was presented by Through These Doors, a domestic violence advocacy agency, and Daniel Young of the Gorham Police Department. DSMF ¶¶ 62-63. Detective Sergeant Young has been a law enforcement officer for 25

18

years and has received advanced training on domestic violence. DSMF ¶¶ 64-65. Detective

Sergeant Daniel Young has co-taught the domestic violence course at the basic law enforcement

training program at the MCJA since approximately 2010, and since approximately 2011 he has also

conducted dozens of in-service domestic violence trainings for law enforcement agencies across the

State of Maine. DSMF ¶ 65. The May 7, 2018 domestic violence presentation included training on

determining the predominant aggressor, consistent with how it is taught at the MCJA, probable

cause, self-defense, strangulation, and determining whether the involved parties are family or

household members as defined under Maine law. DSMF ¶¶ 48-54, 66

There is also no evidence in the record that the Chief of Police or the Town of Yarmouth

acted with the requisite deliberate indifference. The Chief was not on notice that there were any

deficiencies in the training program or that there was a policy, custom, or pattern of

unconstitutional conduct on the part of Yarmouth officers relating to arrests for domestic violence

assault. Prior to receiving the complaint in this case, the Chief was not aware of any widespread

complaints regarding his officers' arrests for domestic violence assault or their determination of the

predominant aggressor. DSMF ¶¶ 74-76. The evidence demonstrates that the Yarmouth training

program is comprehensive and in accordance with the standards mandated by the MCJA and that

Yarmouth officers are adequately supervised. *See* DSMF ¶¶ 46-58, 71, 73. Based on the undisputed

record, no reasonable jury could infer that the Chief or the Town acted with deliberate indifference

or that there was an unconstitutional custom, policy or practice or a deficiency in training that

caused the deprivation of rights alleged here.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court enter summary judgment in

their favor as to all of Plaintiff's Complaint.

Dated:  January 27, 2020

<div style="margin-left:50%">

/s/ Kasia S. Park
Edward R. Benjamin, Jr., Esq.
Kasia S. Park, Esq.
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com

*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2020, I electronically filed the foregoing Defendants'

Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of

CM/ECF system, which will send notification of such filings to all counsel of record.


*/s/ Kasia S. Park*
Kasia S. Park

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
kpark@dwmlaw.com

*Attorney for Defendants*